In re MID–ATLANTIC TOYOTA ANTITRUST LITIGATION.

MARYLAND ex rel. SACHS

v.

MID–ATLANTIC TOYOTA DISTRIBU-TORS, INC., et al.

DELAWARE ex rel. GEBELEIN

v.

MID–ATLANTIC TOYOTA DISTRIBU-TORS, INC., et al.

WEST VIRGINIA ex rel. BROWNING

v.

MID–ATLANTIC TOYOTA DISTRIBU-TORS, INC., et al.

DISTRICT OF COLUMBIA ex rel. ROGERS

v.

MID–ATLANTIC TOYOTA DISTRIBU-TORS, INC., et al.

COMMONWEALTH OF PENNSYLVA-NIA on Its Own Behalf and as Parens Patriae

v.

MID–ATLANTIC TOYOTA DISTRIBU-TORS, INC., et al.

MDL No. 456–Y.

Civ. A. Nos. Y–80–3238, Y–81–650, Y–81–726, Y–81–805 and Y–81–1880.

United States District Court, D. Maryland.

Dec. 22, 1981.

## ORDER

JOSEPH H. YOUNG, District Judge.

It is hereby ORDERED this 22nd day of December, 1981, by the United States District Court for the District of Maryland, that the Opinion issued in the above case dated October 14, 1981, 525 F.Supp. 1265, be hereby MODIFIED by addition of the following language on page 1286 of the Court's Opinion, immediately before the Section entitled "VII. SUMMARY":

Even if federal law is not dispositive of the authority of the state attorneys general to prosecute this action, it is clear that the attorneys general of the jurisdictions in question here, i.e., Maryland, Delaware, Pennsylvania, West Virginia,[23a] and the District of Columbia, have such authority independent of federal law.

23a. There is no challenge to the authority of

*Maryland*

The authority of the Maryland Attorney General to litigate is governed by Article V of the Maryland Constitution. The relevant portion for purposes of this suit is Section 3(a)(2), which directs that the Attorney General shall:

Investigate, commence and prosecute or defend any civil or criminal suit or action or category of such suits or actions in any of the Federal Courts ... on the part of the State or in which the State may be interested, which the General Assembly by law or joint resolution, or the Governor, shall have directed or shall direct to be investigated, commenced and prosecuted or defended.

Thus under Article V, § 3(a)(2), two conditions must be met before the Attorney General may bring an action. First, the action must be one "on the part of the State or in which the State may be interested." Second, the Attorney General must receive authorization to investigate, commence or prosecute the action from either the General Assembly or the Governor.

One has only to look at the caption of the complaint to recognize that the action is brought "on the part of the State." Furthermore, the Attorney General has been authorized by both the governor and the General Assembly to prosecute this action. Subsequent to the institution of this suit the Governor sent a letter of authorization to the Attorney General, which effectively ratified the commencement of the suit. *Reddick v. State*, 213 Md. 18, 130 A.2d 762, *cert. denied*, 355 U.S. 832, 78 S.Ct. 50, 2 L.Ed.2d 44 (1957).

In addition, the Attorney General was clearly authorized by the Maryland Antitrust Act, Md.Com.Law. Code Ann. § 11–201 *et seq.* Section 11–202 provides:

(a) *Purpose, interpretation and construction.*

(1) The General Assembly of Maryland declares that the purpose of this subtitle is to complement the body of federal law

the attorney general of West Virginia.

governing restraints of trade, unfair competition, and acts or practices in order to protect the public and foster fair and honest intrastate competition.

This section was originally Art. 83 § 36 of the 1957 Code Ann. Section 11–209(b)(5) provides:

> (5) The Attorney General may bring an action on behalf of the State or any of its political subdivisions to recover the damages provided for by this subsection or any comparable provision of federal law.

Read in conjunction with the Hart-Scott-Rodino Antitrust Improvements Act of 1976, it is clear that the Attorney General is authorized by state law to bring this *parens patriae* action in the name of the state on behalf of natural persons resident therein. The damages sought to be recovered on behalf of those persons are provided for in Section 4 of the Clayton Act, 15 U.S.C. § 15, a provision of federal law comparable to Section 11–209(b)(2) of the Maryland Antitrust law.

*Pennsylvania*

Likewise, the Attorney General of Pennsylvania has the authority under state law to bring this action as *parens patriae* The power of the Attorney General is governed by the Pennsylvania Constitution and statutory law. Section 4.1 of Article IV of the Pennsylvania Constitution, adopted May 16, 1978, provides in pertinent part:

> An attorney general shall be chosen by the qualified electors of the Commonwealth . . . [H]e shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law.

To implement the constitutional directive, the General Assembly enacted the Commonwealth Attorneys Act, Act No. 164 of 1980, *codified as*, 71 P.S. §§ 732–101 *et seq.* Section 732–204(c) imbues the attorney general with the authority to:

> represent the Commonwealth and its citizens in any action brought for violation of the antitrust laws of the United States and the Commonwealth.

This statute, which became effective January 20, 1981, was in effect at the time this suit was filed. At the time the statute was passed, the Hart-Scott-Rodino Antitrust Improvements Act was in effect. If the General Assembly had intended that this language in Title 71 should not be construed as authorizing the Attorney General to bring an action pursuant to 15 U.S.C. § 15c, it would have specifically provided for nonapplicability in light of 15 U.S.C. § 15h, which directs that "this title shall apply in any State, unless such State provides by law for its nonapplicability in such State."

The legislative history confirms that, because the final report of the Joint State Government Commission concerning the elected Attorney General indicates that the Commission understood that this reference would sufficiently tie in to the federal laws:

> Authority of the Attorney General to bring antitrust actions has been specifically referenced. Such authority is presently provided in amendments to the Federal antitrust laws empowering attorneys general to bring civil actions thereunder as *parens patriae*. (4C Pub.L. 94–435, 15 U.S.C. § 15(c)); . . . Final Report of Joint State Government Commission, *Elected Attorney General*, September 1, 1978, p. 11.

The Court finds therefore, that

> the Attorney General of Pennsylvania has authority to bring this action as a matter of state law.

*Delaware*

Like Pennsylvania, the State of Delaware did not have a comprehensive antitrust law until after the passage of the Hart-Scott-Rodino Antitrust Improvements Act of 1976. In 1979, the General Assembly of Delaware passed the Delaware Antitrust Act, codified in Title 6, Chapter 21 of the Del.Code Ann. Section 2105 of that title provides:

> The Attorney General shall have full power and authority on behalf of the State and its public bodies to investigate suspected violations of this chapter or of federal antitrust laws, and may institute such proceedings as are provided for violations thereof.

Section 15c of Title 15 of the United States Code provides for the *parens patriae* action, a proceeding for violations of federal law.

Defendants' reliance of Section 2108(b) of the Delaware Antitrust Act, which provides for a *parens patriae* procedure for violations of state law modeled after the federal action is misplaced. Section 2108(b) cannot be read to limit the power conferred upon the Attorney General by Section 2105. Rather § 2108(b) was obviously intended to complement the existing federal law and to fill a gap that would have existed in the execution of the state antitrust laws absent that specific statutory authority. This action is, therefore, within the authority of the Attorney General of Delaware by virtue of Delaware state law.

*District of Columbia*

At the time of the institution of this suit in the District of Columbia, Section 1–303 of the District of Columbia Code (1973) was in effect. That section provided that:

> The corporation counsel shall be under the direction of the Commissioner [now the Mayor], and have charge and conduct of all law business of the said District, and all suits instituted by or against the government itself.

This action, brought pursuant to federal law, which specifically identifies the Corporate Counsel of the District of Columbia as one entitled to bring such an action, 15 U.S.C. § 15g, is part of the "law business" of the District and as such is authorized by the local law of the District of Columbia.[23b]

SO ORDERED.

---

**23b.** The language of the statute, 15 U.S.C. § 15g, which defendants contend supports the argument that the Antitrust Improvements Act of 1976 was not intended by Congress to be a federal grant of authority, lends further support to the plaintiffs' argument that the grant was meant to be self-executing. When one looks at the syntax of the reference to the Corporation Counsel. There is no way logically that the phrase "or any other person authorized by State law to bring actions under section 15c of this title," can be read to refer to the Corporation Counsel. Instead, that phrase must be read out when examining the reference to the Corporation Counsel so that the statute logically reads:

> The term "State attorney general" means the chief legal officer of a State . . . and includes the Corporation Counsel of the District of Columbia.